# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL WESSON; THOMAS WOODS; and <br> COMMONWEALTH SECOND AMENDMENT, INC <br> Plaintiffs, <br><br> v. <br><br> TOWN OF SALISBURY, a municipal corporation; <br> THOMAS FOWLER, Chief of the Town of Salisbury <br> Department of Police; TOWN OF NATICK, a <br> Municipal corporation; JAMES HICKS, Chief <br> of the Town of Natick Department of Police. <br> Defendants | Docket No. 1:13-cv-10469 |

## AMENDED COMPLAINT

Plaintiffs, Michael Wesson, Thomas Woods and Commonwealth Second Amendment, Inc., for their Complaint against Defendants, The Town of Salisbury, a Municipal Corporation; Thomas Fowler, Chief of the City of the Town of Salisbury Police Department in his official capacity; The Town of Natick, a Municipal Corporation; James Hicks, Chief of the City of the Town of Salisbury Police Department in his official capacity (hereinafter collectively termed "Defendants"), state as follows:

## INTRODUCTION

1.   This is an action for declaratory and injunctive relief brought to vindicate Plaintiffs' Constitutional rights under the Second and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

## PARTIES

2.   Plaintiff Michael Wesson ("Wesson") is a resident of the Town of Salisbury, MA.

3.   Plaintiff Thomas Woods ("Woods") is a resident of the Town of Natick, MA (hereinafter

the plaintiffs are collectively named "Plaintiffs").

4. Plaintiff Commonwealth Second Amendment, Inc. ("Comm2A") is a non-profit corporation organized under the Massachusetts law with a principal place of business in Natick, Massachusetts.

5. Defendant Town of Salisbury is a Municipal Corporation of the Commonwealth of Massachusetts. Defendant Thomas Fowler is the Chief of Police for The Town of Salisbury's Department of Police and is responsible for executing and administering the town's laws, customs, practices and policies regarding firearms licenses pursuant to powers granted by M.G.L. ch. 140, §§ 131 and 131A. Chief Fowler is presently enforcing the laws complained of in this action, and is sued in his official capacity as the statutorily authorized Licensing Authority.

6. Defendant Town of Natick is a Municipal Corporation of the Commonwealth of Massachusetts. Defendant James Hicks is the Chief of Police for The Town of Natick's Department of Police and is responsible for executing and administering the town's laws, customs, practices and policies regarding firearms licenses pursuant to powers granted by M.G.L. ch. 140, §§ 131 and 131A. Chief Hicks is presently enforcing the laws complained of in this action, and is sued in his official capacity as the statutorily authorized Licensing Authority.

**JURISDICTION and VENUE**

7. This Court has jurisdiction of this claim under 28 U.S.C. §§1331, 1343, 2201, 2202, and 42 U.S.C. § 1983, and U.S. Const. Amend. II and XIV.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**BACKGROUND**

9. Plaintiffs restate and re-allege the above-listed paragraphs.

10. On June 26, 2008, the Supreme Court of the United States held in <u>District of Columbia v. Heller</u>, 128 S.Ct. 2783 (2008) that the right of individuals to keep and bear arms for self-defense is enshrined in the Second Amendment to the United States Constitution. As specifically stated by the <u>Heller</u> Court: "we hold that the District's ban on *handgun possession* in the home violates the Second Amendment. . .. Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must . . . issue him a license to carry [a handgun] in the home." <u>Id.</u> (emphasis added).

11. On June 28, 2010, the Supreme Court of the United States held in <u>McDonald v. City of Chicago</u>, 130 S. Ct. 3020 (2010), that the Second Amendment right to keep and bear arms restrains state and local governments through incorporation in the Fourteenth Amendment.

12. The Commonwealth of Massachusetts gun licensing scheme establishes three classes of license relative to "firearms": 1) Class A License to Carry ("LTC-A"), 2) Class B License to Carry ("LTC-B"), and 3) Firearm Identification Card ("FID") plus an additional Permit to Purchase ("PTP").

13. Under M.G.L. ch. 140, §§ 131(d), 131A Massachusetts residents apply for LTCs, FIDs, and/or PTPs from the police chief of the town or city where they reside or have a place of business. The police chief is authorized by statute as the "Licensing Authority" for all firearms licensing activity. <u>See</u> M.G.L. ch. 140, §§ 121, 131(a), 131(b), 131(d).

14. The Massachusetts licensing scheme utilizes otherwise common terms as "terms of art" with very specific statutory meaning, often leading to confusion in legal argument. Relevant to the present case, "As used in [Chapter 140] sections 122 to 131P, inclusive, … 'Firearm' [is] a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or

bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches. . . ." <u>M.G.L. c. 140 § 121</u>; <u>see also Massachusetts Model Jury Instruction 7.600 and cases cited therein</u>. Accordingly, the Massachusetts definition of "firearm" covers all forms of handguns.

15. M.G.L. c. 140 § 121 mandates that "[a]s used in [Chapter 140] sections 122 to 131P, inclusive . . . 'Large capacity weapon', [is] any *firearm*, rifle or shotgun: (i) that is semiautomatic with a fixed large capacity feeding device; (ii) that is semiautomatic and capable of accepting, or readily modifiable to accept, any detachable large capacity feeding device; (iii) that employs a rotating cylinder capable of accepting more than ten rounds of ammunition in a rifle or *firearm*. . . . The term "large capacity weapon" shall be a secondary designation and shall apply to a weapon in addition to its primary designation as a firearm, rifle or shotgun…" <u>Id.</u> (emphasis added).

16. M.G.L. c. 140 § 121 does not define "Non-large capacity weapon," but logically the definition includes all modern "firearms," rifles or shotguns that are not otherwise "large capacity weapons."

17. M.G.L. c. 140 §131(a) states that a "Class A license shall entitle a holder thereof to purchase, rent, lease, borrow, *possess* and carry: (i) *firearms*, including large capacity firearms, and feeding devices and ammunition therefor, for all lawful purposes, subject to such restrictions relative to the possession, use or carrying of firearms as the licensing authority deems proper. . . ." <u>Id.</u> (emphasis added).

18. M.G.L. c. 140 §131(b) states that a "Class B license shall entitle a holder thereof to purchase, rent, lease, borrow, *possess* and carry: (i) non-large capacity *firearms* and feeding devices and ammunition therefor, for all lawful purposes, subject to such restrictions relative to

the possession, use or carrying of such firearm as the licensing authority deems proper; provided, however, that a Class B license shall not entitle the holder thereof to carry or possess a loaded firearm in a concealed manner in any public way or place; and provided further, that a Class B license shall not entitle the holder thereof to possess a large capacity firearm. . .." Id. (emphasis added)

19.     M.G.L. c. 140 § 129B(6), mandates that "A firearm identification card shall not entitle a holder thereof to *possess*: (i) a *large capacity firearm* . . . or (ii) a *non-large capacity firearm* or large capacity rifle or shotgun. . .."  Id (emphasis added).

20.     M.G.L. c. 140 § 131A, which is a vestige of the early 20th century Massachusetts gun licensing scheme, states that "A licensing authority under section one hundred and thirty-one, upon the application of a person qualified to be granted a license thereunder by such authority, may grant to such a person, other than a minor, a permit to purchase, rent or lease a *firearm* if it appears that such purchase, rental or lease is for a proper purpose, and may revoke such permit at will."   Id. (emphasis added).    This is known as a PTP.

21.     According to M.G.L. c. 140 § 131(d)(i)(e), an applicant for either a LTC-A or LTC-B for a firearm must be denied the license if he or she "has, in any state or federal jurisdiction, been convicted . . .of a violation of any law regulating the *use, possession* or sale of controlled substances as defined in section 1 of chapter 94C. . .."   Id. (emphasis added).

22.     A "Permit to Purchase may be granted only to one capable of being licensed and qualified to be granted a license to carry ("LTC") under G.L. c. 140 § 131." Memorandum from Director of Massachusetts Firearm Support Services, CHSB, attached hereto as Exhibit A. Upon information and belief, the Commonwealth of Massachusetts has not actually issued a PTP

since the 1980's, well before the current gun licensing scheme was enacted.

23. At all times relevant hereto, Plaintiffs held, and still hold, a valid Massachusetts FID, issued by the Massachusetts State Police, pursuant to M.G.L. c. 140 § 129B.

24. Plaintiff Wesson is sixty-four years old.

25. Plaintiff Woods is fifty-one years old.

26. Plaintiff Wesson has a misdemeanor conviction, entered in the State of Maine in 1973, for simple possession of much less than one ounce of marijuana. Plaintiff paid a $300 fine to resolve the charge without a lawyer. Plaintiff is eligible to possess and receive "firearms," as that term is defined under Massachusetts law, under both the laws of the United States, and the State of Maine.

27. Plaintiff Woods has a misdemeanor conviction, entered in the Commonwealth of Virginia in 1982, for simple possession of much less than one ounce of marijuana. Plaintiff paid a $10 fine to resolve the charge without a lawyer. Plaintiff is eligible to possess and receive "firearms," as that term is defined under Massachusetts law, under both the laws of the United States, and the Commonwealth of Virginia.

28. Plaintiffs have never been convicted of a felony or any other disqualifying misdemeanor in any jurisdiction. Plaintiffs are not current active users of illegal drugs and are not alcohol dependent persons. Plaintiffs have never been treated for addiction to any controlled substance or alcohol.

29. The plain language and application of G.L. c. 140 §§ 131 and 131A prohibit Plaintiffs from obtaining a LTC-A, LTC-B and/or PTP because of their marijuana possession convictions. Accordingly, Massachusetts has imposed a complete "firearm" ban on Plaintiffs and the entire class of persons convicted of marijuana possession no matter when in history the conviction

occurred and without regard for whether the person is not a current user of illegal drugs or drug or alcohol dependent.

30. Plaintiff Wesson applied for a License to Carry in 1993, but was denied due to his forty-year old marijuana possession conviction for a small amount of marijuana, much less than one ounce.

31. Plaintiff Woods applied for a LTC in 2011, but the Natick Police would not process his application because of his disqualification due to his thirty-year old marijuana possession conviction for a small amount of marijuana, much less than one ounce.

32. On or about February 6, 2013, Plaintiff Woods applied for a PTP with Defendant Natick, but the Natick Police informed him on or about February 13, 2013 that they would take no action because the Firearms Record Bureau reportedly phased out issuing PTPs in the 1980s, and because the PTP "is not an option" due to his thirty year old conviction for marijuana possession.

33. On or about January 28, 2013, Plaintiff Wesson applied for a Permit to Purchase with Defendants, but is prohibited from receiving said PTP for the same reason set forth in paragraph 32, and his forty-year old marijuana conviction.

34. Although not directly binding on the present case because Plaintiffs' convictions were thirty and forty-years ago, in 2008 Massachusetts decriminalized possession and use of marijuana in amounts less than one ounce. As stated in MGL c. 94C § 32L, a statute entitled An Act Establishing A Sensible State Marihuana Policy, "neither the Commonwealth nor any of its political subdivisions or their respective agencies, authorities or instrumentalities *may impose any form of penalty, sanction or disqualification* on an offender for possessing an ounce or less of marihuana." Id. (emphasis added).

35. Plaintiffs Woods and Wesson each seek to lawfully purchase and possess a "firearm" for

use in their homes for self-defense. Defendants' actions have denied Plaintiffs their right to possess and purchase a "firearm" for use in their homes for self-defense as protected by the Second and Fourteenth Amendments to the U.S. Constitution.

36.     As responsible gun owners, Plaintiffs each seek to maintain proficiency in the safe use of their firearm by transporting it, subject to reasonable safe transport restrictions, to a range for practice. Defendants' actions in denying Plaintiffs both a LTC-A License or a LTC-B License "subject to such restrictions relative to the possession, use or carrying of firearms as the licensing authority deems proper," (See G.L. c. 140 § 131) have denied both Plaintiffs their right to transport a firearm to maintain proficiency in the safe use of a "firearm" in their homes for self-defense as protected by the Second and Fourteenth Amendments to the U.S. Constitution.

37.     Plaintiffs Woods and Wesson have been denied their right to purchase and possess a "firearm" for use in their homes for self-defense as protected by the Second and Fourteenth Amendments to the U.S. Constitution.

38.     Defendants cannot support their denial of Plaintiff's Second and Fourteenth Amendment rights under any level of Constitutional scrutiny.

39.     Plaintiff Comm2A is a nonprofit organization recognized under § 501(c)(3) of the Internal Revenue Code. The purposes of Comm2A include education, research, publishing, and legal action focusing on the constitutional right of the people to possess and carry firearms.

40.     Comm2A expends significant resources assisting people who are denied LTCs and PTPs under the authority of M.G.L. c. 140, §§ 131 and 131A, including specifically people denied licenses from the Natick Police Department and the Salisbuury Police Department.

41.     Plaintiffs Woods and Wesson, supporters of Comm2A, have been denied and/or are unconstitutionally prohibited from receiving LTC's and PTPs pursuant to M.G.L. ch. 140, §§

131 and 131A and are injured in their inability to possess handguns for protection.

42.  In addition, both supporters of Comm2A and members of the general public have contacted Comm2A as a result of the denial of their LTC's. Comm2A has expended time, energy, and money to consult with and provide assistance to these individuals, and particularly with regard to issues surrounding their inability to exercise the right of armed self-protection.

43.  Comm2A would not expend its organizational resources to respond to the demands of its supporters and of the general public regarding the restriction of their LTC's by the Defendants if Defendants did not impose restrictions in the first instance. Comm2A would instead use its organizational resources to pursue other organizational priorities.

## COUNT I
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
## (U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983)

44.  The preceding paragraphs are incorporated herein by reference.

45.  The plain language and interpretation of M.G.L. c. 140 §§ 131 and 131A, and the denial of Plaintiffs Woods' and Wesson's LTC and PTP applications, effectively denies Plaintiffs the constitutional right to purchase and possess a "firearm" for self-defense in their homes in Massachusetts, and the right to maintain safe proficiency by transporting it, within reasonable transportation regulations, to a firing range.

46.  The plain language of M.G.L. c.140 §§ 131 and 131A, and the denial of Plaintiffs' LTC and PTP applications has deprived plaintiff of the fundamental right under the Second and Fourteenth Amendments to the U.S. Constitution to keep a handgun in their homes for self-defense.

47.  M.G.L. c. 140 §§ 131 and 131A, as applied to Plaintiffs, therefore infringe on Plaintiffs right to keep and bear arms in violation of the Second and Fourteenth Amendments to the U.S. Constitution, and are void.

48.     The defendants' denial of plaintiffs' LTC and PTP applications constitutes a deprivation of Plaintiff's fundamental constitutional right to keep and bear arms under color of law.

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, as follows:

(A)     Declaratory judgment that M.G.L. c. 140 §§ 131(d)(i)(e) and 131A, as applied, violate Plaintiffs' constitutional right to keep and bear arms under the Second and Fourteenth Amendments to the U.S. Constitution, to the extent they allow Defendants to prohibit otherwise qualified private citizens from purchasing and possessing "firearms" for the purpose of self-defense and to maintain proficiency through continued safety training and practice by transporting said "firearms," within reasonable transportation regulations, to a firing range;

(B)     Declaratory judgment that the denial of Plaintiff's applications for a Massachusetts License to Carry and Permit to Purchase violates Plaintiff's constitutional right to keep and bear arms under the Second and Fourteenth Amendments to the U.S. Constitution;

(C)     Granting injunctive relief requiring defendants to issue a Massachusetts LTC to plaintiffs sufficient for plaintiff to possess, purchase and transport firearms to a range to maintain proficiency through continued safety training and practice for the general purpose of self-defense;

(D)     An Order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the customs, policies and practices related to enforcement of M.G.L. c. 140 §§ 131(d)(i)(e) and 131A.

(E)     Awarding Plaintiff his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

(E)     Awarding such other and further relief as may be equitable and proper.

                                                  Respectfully Submitted,
                                                  The Plaintiffs,
                                                  by Their Attorney,

                                                  __/s/Jeffrey Scrimo_____
                                                  Jeffrey T. Scrimo
                                                  LYNCH SCRIMO – ATTORNEYS
                                                  PO Box 1787
                                                  68 Main St., 2nd Floor
                                                  Lenox, MA 01240
                                                  BBO# 649864
                                                  (P) 413-637-1300
                                                  (F) 866-230-7304
                                                  (email)   Jeff@LenoxAttorney.com