UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Michael Wesson, Thomas Woods and ) <br> Commonwealth Second Amendment, Inc. ) <br>    Plaintiffs ) <br> v. ) <br> ) <br> Town of Salisbury, a municipal corporation; ) <br> Thomas Fowler, Chief of the Town of Salisbury ) <br> Department of Police; Town of Natick, a ) <br> municipal corporation; and James G. Hicks, ) <br> Chief of the Town of Natick Police Department, ) <br>    Defendants ) <br> ) | Case No. 13-CV-10469-RGS |

## TOWN OF NATICK AND JAMES G. HICKS MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

### Introduction

> It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the "policy" of enforcing state law. If the language and standards from *Monell* are not to become a dead letter, such a "policy" simply cannot be sufficient to ground liability against a municipality.

*Surplus Store & Exchange, Inc. v. City of Delphi,* 928 F.2d 788, 791–92 (7th Cir.1991).

The question in this case is whether a local municipality – the Town of Natick and the Town's Chief of Police, James G. Hicks, acting in his official capacity ("Chief" or "Chief Hicks") (together referred to herein as the "Town") – can be liable under 42 U.S.C. §1983 for complying with a <u>state</u> statute, validly passed and repeatedly upheld by the First Circuit and the Massachusetts Supreme Judicial Court. When the Chief denied Plaintiff Woods'[1] applications for a license to carry a firearm ("LTC") and a Permit to Purchase ("PTP") based on a past disqualifying conviction, he was not following a law, policy, or custom of the <u>Town</u>. Rather, he

---

[1] Plaintiff Woods' application was denied in Natick; Plaintiff Wesson's applications was denied by Salisbury. The Town also notes the lack of standing on the part of Plaintiff Commonwealth Second Amendment, Inc., and Plaintiff Wesson vis a vis Natick.

was merely following the <u>state's</u> law which provided him no discretion to decide otherwise. A municipality should not be liable for following longstanding state law which provides no discretion to the local chief of police; the Town's denial of Plaintiff Woods' applications was merely a ministerial act dictated by state law. Accordingly, this Court should enter judgment on the pleadings in favor of the Town and Chief Hicks.[2]

## Argument

Plaintiff alleges that when Chief Hicks denied him a LTC in 2011 and a PTP in 2013 because of a statutorily disqualifying conviction, the Town deprived him of a fundamental constitutional right.[3] But common sense and precedent indicate that the Town simply should not be held liable under §1983 for enforcing a non-discretionary, <u>state</u> statute.

In *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978), the Supreme Court held that a municipality (and municipal actors in their official capacity) can be found liable under §1983 only if the municipality *itself* causes the constitutional violation at issue.

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a **government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy**, inflicts the injury that the government as an entity is responsible under § 1983.

---

[2] Given that the Commonwealth has elected to intervene in this case, dismissing the Natick Defendants does not affect the core relief sought by Plaintiffs. With the Commonwealth in the case, this Court can provide Plaintiffs with the full panoply of relief available under §1983 if the Court rules in Plaintiffs' favor on the constitutionality of G.L. c. 140, §131. If the challenged aspect of the statute is found to be unconstitutional by this Court, then that effectively changes the state law the Town of Natick Defendants are bound to, and they will conduct themselves accordingly without the need of any specific order from this Court mandating that Plaintiff Wood be issued an LTC. There thus is no reason for the Town of Natick to remain a party to this case and potentially be liable for attorneys fees to Plaintiffs. The constitutionality or not of the statute is the state's problem, not Natick's.

[3] The Town anticipates that the Commonwealth will defend the constitutionality of the statute via summary judgment. Here, the Town seeks judgment on the pleadings on the basis that Plaintiffs cannot make out a §1983 claim against it, regardless of the constitutionality of the statute.

*Monell*, 436 U.S. 658, 694, (1978); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). ("[A] municipality can be found liable under § 1983 only where the municipality <u>itself</u> causes the constitutional violation at issue."). This burden is on the Plaintiff.

> A plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Id. at 403, 117 S.Ct. 1382 (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018).

*Haley v. City of Boston*, 657 F.3d 39, 51 (1st Cir. 2011). Plaintiff has not and cannot show that the alleged deprivation was caused by the <u>Town's</u> policy or custom.

### A. The Plaintiff Has Not and Cannot Identify a <u>Town</u> Policy or Custom that Caused the Alleged Constitutional Deprivation

#### 1. The Massachusetts Firearm Statute Did Not Provide the Chief Discretion to Grant Plaintiff an LTC or PTP

M.G.L. c. 140, §131, regulates when and to whom an LTC may issue. M.G.L. c. 140, §131A regulates when and to whom a PTP may issue (together, "Massachusetts Firearm Statute"). A PTP may not issue if the applicant is not eligible for a LTC. Complaint, ¶ 22; Exhibit A to Complaint, <u>Memorandum from Director of Massachusetts Firearm Support Services</u>. In order to lawfully, purchase, rent, lease, borrow, possess, or carry a firearm, a resident of Massachusetts must hold an LTC. Complaint ¶¶ 12-22; *see also Chardin v. Police Com'r of Boston*, 465 Mass. 314, 315 (2013). As far as this case involving statutory disqualifiers is concerned, the statute assigns to chiefs of police the ministerial duty of determining whether or not an applicant is eligible for an LTC.[4]

The Massachusetts Firearm Statute allows a licensing authority – in this case, the Town of Natick through Chief Hicks in his official capacity as Chief of Police – to issue an LTC to any

---

[4] This is <u>not</u> a case involving the discretionary aspect of the statute, i.e., whether or not an applicant is a "suitable person" to be issued a LTC. This case involves only statutory disqualifications, over which a chief of police has no discretion.

"suitable person", subject to any statutory exception(s).  *See* M.G.L. c. 140, §131(d).  The statute lists five (5) such exceptions:

> Any person residing or having a place of business within the jurisdiction of the licensing authority . . . may submit to such licensing authority . . . an application for a Class A or Class B license to carry firearms . . . which such licensing authority . . . may issue if it appears that the applicant is a suitable person to be issued such license . . . <u>unless</u> the applicant:
>
> > (i) has, *in any state or federal jurisdiction*, been convicted or adjudicated a youthful offender or delinquent child for the commission of (a) a felony; (b) a misdemeanor punishable by imprisonment for more than two years; (c) a violent crime as defined in section 121; (d) a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed; or (e) **<u>a violation of any law regulating the use, possession or sale of controlled substances as defined in section 1 of chapter 94C</u>**

M.G.L. c. 140, §131(d)(i) (emphasis supplied).  These five (5) exceptions are non-discretionary.  If an applicant falls into one of the exclusions, the Massachusetts Firearm Statute prohibits the Town from issuing an LTC to the applicant, an act which can only be viewed as ministerial.  *See* M.G.L. c. 140, §131(d)(i); *see also* Complaint, ¶12 ("an applicant for either a LTC-A or LTC-B for a firearm **must be denied** the license if he or she 'has, in any state or federal jurisdiction, been convicted . . . of a violation of any law regulating the *use, possession* or sale of controlled substances as defined in section 1 of chapter 94C . . ..'") (emphasis in bold supplied; emphasis in italics original to Complaint) (quoting M.G.L. c. 140, s. 131(d)(i)).

Plaintiff Woods was convicted in the Commonwealth of Virginia for possession of a controlled substance as that term is defined in section 1 of chapter 94C of the General Laws of Massachusetts, albeit many years ago.  *See* Complaint, ¶ 27; *see also* M.G.L. c. 94C, s. 1, *et seq.*  Accordingly, the Massachusetts Firearm Statute required the Town to deny Plaintiff Woods' applications for a LTC and PTP.  The parties agree that Plaintiff Woods' prior conviction is a disqualifier under the statute; that is why its constitutionality is being challenged.

4

### 2. Following State Law Is Not a Municipal Custom or Policy

The only municipal policy or custom in this case which Plaintiff arguably can posit is the decision – if it can even be called that – of the Town to follow state law when it denied the Plaintiff an LTC.  As Judge Stahl sensibly noted in his concurrence in *Yeo v. Town of Lexington*, 131 F.3d 241, 257 (1st Cir. 1997), in order to demonstrate that the Town's policy or custom caused the alleged constitutional violation – as required by *Monell* – a Plaintiff must do more than show that a Town merely followed state law:

> The Town's freedom from liability flows less from the fact (if it be fact, *see infra* Part II) that the students are private actors than from the fact that the students' actions were not caused by Town policy or custom. Again, plaintiff has not advanced as a theory of liability the Town's decision to let the students decide—the only municipal policy or custom which can arguably be seen at play here. And even if plaintiff had so argued**, it seems obvious that, as an action taken in what appears to have been good faith reliance upon state law,** *see* **Mass. Gen. L. c. 71, § 82, this policy cannot give rise to municipal liability under § 1983.** *See Surplus Store & Exchange, Inc. v. City of Delphi,* 928 F.2d 788, 791–92 (7th Cir.1991).

*Yeo v. Town of Lexington*, 131 F.3d 241, 257 (1st Cir. 1997) (concurring opinion) (emphasis supplied).[5]  Where a statute affords no discretion on the part of a municipality (or even limited discretion) and where a municipality merely enforces state law, other Circuit Courts have generally found no §1983 liability.  In the 2nd Circuit case of *Vives v. City of New York*, 524 F.3d 346, 351-53 (2d Cir. 2008), for example, the Court wrote that:

> The City's position is supported—again to varying degrees—by Fourth, Seventh, and Tenth Circuit authority.  *See Bockes v. Fields,* 999 F.2d 788, 791 (4th Cir.1993) (holding that county board did not act in a policy-making capacity when it fired plaintiff because termination procedures and criteria were prescribed by the state although the state procedures allowed the county board some discretion); *Surplus Store and Exch., Inc. v. City of Delphi,* 928 F.2d 788, 791 (7th Cir.1991) (holding insufficient for *Monell* liability plaintiff's claim that municipality had a policy of enforcing state statutes and stating: "It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law."); *Whitesel v. Sengenberger,* 222 F.3d 861, 872 (10th Cir.2000) (stating that it was not clear whether policies of state entity authorized certain

---

[5]   Plaintiff Woods has not alleged any bad faith on the part of the Town Defendants.

actions but "emphasiz[ing] that the [municipal entity] cannot be liable for merely implementing a policy created by the state [entity]").

*Id.* at 351-52 (emphasis supplied).

The Town's position that merely following state law cannot constitute a "policy" or "custom" for purposes of demonstrating *Monell* liability under §1983 is supported by the fact that the particular statute in question, M.G.L. c. 140, §131, provides the Chief *no* discretion in denying an LTC to applicants who fall into one of the statutory disqualificatons. As the Second Circuit stated in *Vives*, in order for the action of a Town to constitute a "policy" for *Monell* purposes, such policy "will ordinarily be the result of a conscious choice" among various alternatives by the Town. *See Vives*, 524 F.3d at 352-53. As that Court wrote:

> Freedom to act is inherent in the concept of "choice." Therefore, in addressing the conscious choice requirement, we agree with all circuits to address state laws mandating enforcement by municipal police officers that a municipality's decision to honor this obligation is not a conscious *choice.* As a result, the municipality cannot be liable under *Monell* in this circumstance.

*Id*, 524 F.3d at 353.

> Municipal liability under §1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 470 (1986). It is only a tortured and attenuated reading of the words "policy" or "custom" that would allow liability to flow from a municipality's mere adherence to a non-discretionary state law.[6] Because the Town had no

---

[6] The lack of true "conscious choice" in this case is even more pronounced here, where both the First Circuit and the Massachusetts Supreme Judicial Court have repeatedly rejected various constitutional challenges to various aspects of the very statute in question. *See, e.g.*, *Hightower v. City of Boston*, 693 F.3d 61 (2012) (rejecting Second Amendment and other constitutional challenge to portions of M.G.L. c. 140, §131 related to license revocation); *Chardin v. Police Com'r of Boston*, 465 Mass. 314, 329 (2013) *cert. denied,* 134 S. Ct. 525, 187 L. Ed. 2d 368 (2013). The Town simply followed a state law which required it to deny Plaintiff's application and over which the Town had no discretion. *See*

freedom of choice in its decision to deny Plaintiff an LTC, and the only action by the Town was to follow non-discretionary state law, there was no municipal policy or custom that caused the alleged constitutional deprivation. Put another way, it was the Town's <u>ministerial</u> duty under the statute to deny Plaintiff Woods' applications.

**B.     The Plaintiff Has Not and Cannot Identify a Town Policy or Custom that *Caused* the Alleged Constitutional Deprivation**

Even if it can be maintained, somehow, that the Town's adherence to state law somehow constitutes a "policy" or "custom" for *Monell* purposes, Plaintiff of course must also show that said policy or custom was the direct *cause* of the alleged constitutional violation.

> In *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), we decided that a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue.

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). S*ee also Santiago v. Fenton*, 891 F.2d 373, 381 (1st Cir. 1989) ("[A] plaintiff must show that a policy or custom of the city led to the constitutional deprivation alleged. . . . This requires that plaintiff demonstrate both the existence of a policy or custom *and a causal link* between that policy and the constitutional harm.") (emphasis supplied).

As absurd as it is to attribute to the Town a 'policy' or 'custom' for the mere adherence to a non-discretionary state law, it is equally if not more untenable to suggest such adherence was *the actual cause* of the alleged deprivation. If there is any constitutional violation , it flows from the state statute that represents the direct cause of such violation, and not the merely ministerial action on the part of the Town. As the Seventh Circuit succinctly stated:

---

Complaint, ¶ 12. It is not within the Town's purview to pick and choose which state laws it wishes to follow.

7

> It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, **and whose causal connection to the alleged violation is more attenuated**, than the "policy" of enforcing state law. If the language and standards from *Monell* are not to become a dead letter, such a "policy" simply cannot be sufficient to ground liability against a municipality.

*Surplus Store*, 928 F.2d at 791-92 (emphasis supplied).  The Town and Chief Hicks should simply not be parties in this case where no policy, custom, or law of the municipality itself is alleged to have caused the deprivation.   Accordingly, this Court should enter judgment on the pleadings in favor of the Town and Chief Hicks.

### Conclusion

For the above reasons, Defendants, the Town of Natick and Chief Hicks acting in his official capacity respectfully request this Court to enter judgment on the pleadings in their favor.

|  |  |
|---|---|
|  | Respectfully submitted by<br>Defendants Town of Natick<br>and James G. Hicks,<br>By their attorney<br><br>/s/ Geoffrey P. Wermuth_____<br>Geoffrey P. Wermuth, BBO #559681<br>Murphy, Hesse, Toomey & Lehane<br>300 Crown Colony Drive, P.O. Box 9126<br>Quincy, MA 02269-9126<br>(617) 479-5000 |
| DATED:      March 1, 2014 | gwermuth@mhtl.com |

### CERTIFICATE OF SERVICE

I, Geoffrey P. Wermuth, hereby certify that I that this document filed through the ECF System will be send electronically to the registered participants as identified on the notice of Electronic Filing (MEF) and paper copies will be send to those indicated as non-registered participants this 1st day of March, 2014.

/s/ Geoffrey P. Wermuth
Geoffrey P. Wermuth